# EXHIBIT A

STATE OF MINNESOTA                          COUNTY OF HENNEPIN

DISTRICT COURT                              FOURTH JUDICIAL DISTRICT

---

                                            Civ. Case No. _____
Brandon Lewis,                              Case Type:  7 Employment

                    Plaintiff,

                                            **SUMMONS**

Ashland, Inc. d/b/a
Valvoline Instant Oil Change,

                    Defendant.

---

The State of Minnesota to the Above-Named Defendant:

        You are hereby summoned and required to serve upon plaintiff's attorney an answer to

the Complaint which is herewith served upon you within 20 days after service of this Summons

upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken

against you for the relief demanded in the complaint.

                **NOTICE OF ALTERNATIVE DISPUTE RESOLUTION PROVISIONS**

        Pursuant to Minn. Stat. Sec. 543.22, notice is hereby give that alternative dispute

resolution is available to each party.  Guidelines relating to the alternative dispute resolution

process may be found in Rule 114, Rules of General Practice for the District Courts.

Dated: November 19, 2009

                              Leslie L. Lienemann (MN No. 230194)
                              Celeste E. Culberth (MN No. 228187)
                              **CULBERTH & LIENEMANN, LLP**
                              1050 UBS Plaza
                              444 Cedar Street
                              St. Paul, MN 55101
                              (651) 290-9300 (Telephone)
                              (651) 290-9305 (Facsimile)
                              **ATTORNEYS FOR PLAINTIFF**

STATE OF MINNESOTA                      COUNTY OF HENNEPIN

DISTRICT COURT                          FOURTH JUDICIAL DISTRICT

---

Brandon Lewis,                          Civ. Case No. _____
                                        Case Type:  7 Employment
                    Plaintiff,

                                        **COMPLAINT AND**
v.                                      **JURY DEMAND**

Ashland, Inc. d/b/a
Valvoline Instant Oil Change,

                    Defendant.

---

As and for his Complaint, Plaintiff states and alleges as follows:

1.  Plaintiff is an individual residing in Richfield, Minnesota.

2.  Ashland, Inc. is a foreign corporation, with headquarters at 3499 Blazer Parkway, Lexington, Kentucky, 40509.  Ashland, Inc. is registered to do business in Minnesota under the assumed name of Valvoline Instant Oil Change.  Plaintiff worked for Defendant at the Valvoline Instant Oil Change located at 5602 Lakeland, Crystal, MN 55428.

3.  Defendant is an employer as that term is defined by Minn. Stat. Section 181.950 Subd. 6 because it is located in and doing business in the State of Minnesota and has one or more employees in the state.

4.  In December 2007, Plaintiff began working for Defendant as a certified technician.

5.  Plaintiff was not asked or required to take a pre-employment drug test.

6.  Ashland, Inc. has a drug testing policy.

7. Plaintiff does not recall ever being given a copy of Ashland's drug testing policy.

8. Plaintiff does not recall ever having been given a form on which to acknowledge that he had seen a copy of the drug testing policy. After Defendant terminated Plaintiff's employment, Plaintiff requested a copy of his personnel file. Defendant sent Plaintiff a copy of his personnel file. No such form was included in his personnel file.

9. On December 1, 2008, Plaintiff came in to work. Shortly after he came in to work, Defendant's manager Sean Fautch asked Plaintiff to go pick up co-worker David Joyner. Plaintiff drove to pick up Joyner and brought Joyner into work.

10. Shortly after Plaintiff and Joyner began working, Fautch approached Plaintiff and asked Plaintiff whether he used drugs. Plaintiff said that he did not use drugs. Fautch asked Plaintiff whether he would be willing to take a drug test. Plaintiff said he would be willing to take a drug test. Fautch did not inform Plaintiff that he intended Plaintiff to undergo a drug test based upon reasonable suspicion.

11. Fautch then asked Joyner if he would be willing to take a drug test.

12. Fautch transported Plaintiff and Joyner to the drug testing facility.

13. Despite not having told Plaintiff that he had been selected for a drug test based on reasonable suspicion, Defendant informed the testing facility that he had been selected for a drug test due to "Reasonable Suspicion/Cause."

14. Defendant never informed Plaintiff that he had been selected for "Reasonable Suspicion/Cause" and Plaintiff only learned of this allegation after receiving copies of the Chain of Custody Form completed by the drug testing facility.

15. Defendant did not have reasonable suspicion or cause to require Plaintiff to submit to a drug test.

16. Defendant did not follow the dictates of its own drug testing policy relating to reasonable suspicion substance abuse testing.

17. When Plaintiff arrived at the testing facility, Debbie Stich gave him a urine collection cup. After Plaintiff had urinated in the cup, Stich informed him that he may not have provided a sufficient sample. Stich asked him to sign a paper stating that he would have three hours within which to provide another sample. She told him to wait in the waiting room.

18. Joyner was also told his sample was insufficient and informed that he had three hours in which to provide a second sample.

19. Stich signed her name on the Chain of Custody Form on the signature line certifying that Plaintiff's sample had been "collected, labeled, sealed, and released to the Delivery Services".

20. After Stich certified that she had collected, labeled, sealed and released Plaintiff's sample to the Delivery Services, Defendant cancelled the drug test.

21. After a short period of time, Plaintiff informed Stich that he was ready to provide a second sample. When he did this, he saw Fautch standing over Stich. Stich wrote something on a piece of paper and turned the paper over so that Plaintiff could not see it. Fautch informed Plaintiff that they had decided to test the first sample. Plaintiff objected, and informed Fautch that Stich had told him the prior sample had been insufficient and stated that he wanted and was able to provide a larger sample. Fautch replied, "We're not going to sit here and wait." Plaintiff

told Fautch that he believed Stich had dumped out the first sample. Fautch told him to "Sit down."

22. Joyner was permitted to submit a second sample.

23. Plaintiff was not permitted to submit a second sample.

24. Fautch then directed the two employees to leave, and the three began walking out of the testing clinic. Plaintiff saw that Joyner was holding a piece of paper. Plaintiff asked Fautch where his paper was. Fautch replied, "Right here," holding a piece of paper in his hand. Plaintiff asked Fautch to give him the paper. Fautch refused. Plaintiff asked again. This time, Fautch handed him the sheet of paper. When Plaintiff read it, he realized that it wasn't his, it was Joyner's, and asked Fautch again where his paper was. Fautch said he did not have it.

25. Plaintiff continued to insist that he be given a copy of his paperwork. Fautch then told Plaintiff that Defendant had cancelled the test.

26. Plaintiff reminded Fautch that he had told him that his first sample had been tested and that they had refused to allow him to provide the additional sample. Fautch told him to "Shut up" or he would get fired.

27. Plaintiff asked Fautch, "Why would you lie?" Fautch replied, "If you don't shut up about it, you're fired."

28. Plaintiff told Fautch that he believed the result of Fautch's actions would be that he would be fired for refusing to take the test, when he had not refused to take the test.

29. Fautch told Plaintiff that, since he wouldn't "shut up" about it, he was fired. Fautch told Plaintiff if he didn't like it, he could talk to Todd Green, who was in charge of Ashland's drug testing policy enforcement.

30. The next day, Plaintiff called Ashland, Inc.'s human resources department and questioned why his employment was being terminated.  He was told that the personnel system did not yet reflect that he had been fired.

31. Todd Green then called Plaintiff and informed him that Fautch had reported to him that Plaintiff had refused to take the test, and that, based upon Fautch's representation, Green had cancelled the test.  Green told him he had not been informed by Fautch that Plaintiff had supplied a sample, or that Stich had informed him he had three hours in which to submit a second sample, or that Fautch had informed Plaintiff that his first sample had been tested, or any accusation that Plaintiff had intentionally disrupted the first sample.

32. Plaintiff later spoke with two assistant managers who were present at work and saw him on the day of the drug test, who told him they did not believe there had been any reasonable cause to require Plaintiff to undergo a drug test.

33. Fautch did not have a basis for forming a belief based upon specific facts that Plaintiff was under the influence of drugs, and requesting Plaintiff to take a drug test was arbitrary and capricious.

34. As a result of Defendant's conduct, Plaintiff suffered loss of pay.

35. At the time Defendant terminated his employment, Plaintiff had an infant daughter.  Defendant's conduct caused Plaintiff emotional distress, including concern for his ability to provide for his infant daughter.

5

## COUNT ONE

36. Plaintiff restates the allegations contained in paragraphs one through 35 above and includes them in this count as though fully restated herein.

37. Defendant violated the Minnesota Drug and Alcohol Testing in the Workplace Act, Minn. Stat. §181.950 *et seq.*, and specifically §181.951 by requiring or requesting Plaintiff to undergo a drug test on an arbitrary and capricious basis and without reasonable suspicion.

38. As a result of Defendant's violation, Plaintiff has suffered and will continue to suffer loss of pay and benefits.

39. As a result of Defendant's violation, Plaintiff has incurred and will continue to incur attorney fees and costs.

## COUNT TWO

40. Plaintiff restates the allegations contained in paragraphs one through 39 above and includes them in this count as though fully restated herein.

41. Defendant violated the Minnesota Drug and Alcohol Testing in the Workplace Act, Minn. Stat. §181.950, *et. seq.* by terminating Plaintiff's employment without cause, arbitrarily and capriciously.

42. As a result of Defendant's violation, Plaintiff has suffered and will continue to suffer loss of pay and benefits.

43. As a result of Defendant's violation, Plaintiff has incurred and will continue to incur attorney fees and costs.

## COUNT THREE

44. Plaintiff restates the allegations contained in paragraphs one through 43 above and includes them in this count as though fully restated herein.

45. Defendant violated the Minnesota Drug and Alcohol Testing in the Workplace Act, Minn. Stat. §181.950, *et. seq.*, and specifically §181.952 Subd, 2, by failing to provide Plaintiff a written copy of its drug testing policy.

46. As a result of Defendant's violation, Plaintiff has suffered and will continue to suffer loss of pay and benefits.

47. As a result of Defendant's violation, Plaintiff has incurred and will continue to incur attorney fees and costs.

## COUNT FOUR

48. Plaintiff restates the allegations contained in paragraphs one through 47 above and includes them in this count as though fully restated herein.

49. Defendant violated the Minnesota Drug and Alcohol Testing in the Workplace Act, Minn. Stat. §181.950, *et. seq.*, and specifically 181.953 Subd. 6, by failing to provide Plaintiff with an acknowledgment form.

50. As a result of Defendant's violation, Plaintiff has suffered and will continue to suffer loss of pay and benefits.

51. As a result of Defendant's violation, Plaintiff has incurred and will continue to incur attorney fees and costs.

## JURY DEMAND

Plaintiff demands a jury on all claims.

7

## PRAYER FOR RELIEF

Plaintiff demands that judgment be entered in his favor and prays the Court to award the following relief:

1. Damages for lost pay, benefits and emotional anguish in an amount in excess of $50,000;

2. Attorneys fees and costs;

3. All other relief the Court finds just.

Dated: November 19, 2009

Leslie L. Lienemann (MN No. 230194)
Celeste E. Culberth (MN No. 228187)
**CULBERTH & LIENEMANN, LLP**
1050 UBS Plaza
444 Cedar Street
St. Paul, MN 55101
(651) 290-9300 (Telephone)
(651) 290-9305 (Facsimile)

8

## ACKNOWLEDGMENT

The maker of this pleading hereby acknowledges that sanctions may be awarded under Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated:  November 19, 2009

Leslie L. Lienemann

9