UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-3515(DSD/FLN)

Brandon Lewis,

              Plaintiff,

v.                                                **ORDER**

Ashland, Inc., doing
business as Valvoline
Instant Oil Change,

              Defendant.


    Celeste E. Culberth, Esq., Leslie L. Lienemann, Esq. and
Culberth & Lienemann, LLP, 444 Cedar Street, Suite 1050,
St. Paul, MN 55101, counsel for plaintiff.

    Charles M. Roesch, Esq., Elizabeth A. Simmons, Esq. and
Dinsmore & Shohl, 255 East Fifth Street, Suite 1900,
Cincinnati, OH 45202 and Mark J. Girouard, Esq., Matthew
E. Damon, Esq. and Nilan, Johnson & Lewis, 120 South
Sixth Street, Suite 400, Minneapolis, MN 55402, counsel
for defendant.


    This matter is before the court upon the motion for summary judgment by defendant Ashland, Inc. d/b/a/ Valvoline Instant Oil Change (Valvoline).  Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.


**BACKGROUND**

    This employment dispute arises out of the termination of plaintiff Brandon Lewis by Valvoline on December 1, 2008.  Lewis began working for Valvoline as a technician in May 2008.  Valvoline

has a substance abuse policy stating that "[e]mployees who ... refuse to cooperate fully with the drug and/or alcohol screening or search provision of the policy will be terminated except where prohibited by law." Lewis Dep. 94:8-96:9; id. Ex. 9. Lewis states that he received a written copy of the policy during his employment orientation and signed a form acknowledging receipt. Id. 91:8-16, 92:22-93:9. Lewis also understood that either he or Valvoline could terminate the employment relationship "at anytime, with or without notice, for any reason, at will." Id. Ex. 8.

On December 1, 2008, shortly after Lewis arrived to work another employee, D.J., called for a ride to work. Sean Fautsch, Valvoline Store Manager, gave Lewis permission to drive to pick up D.J. Id. 101:3-22; Fautsch Dep. 36:16-25. Lewis did so, and D.J. smoked a Black & Mild cigar while driving back to the Valvoline store. Lewis Dep. 102:19-103:13.

Fautsch smelled a strong odor of what he believed to be marijuana on Lewis and D.J. when they arrived. Fautsch Dep. 40:24-25. Fautsch approached Lewis and asked him if he had been smoking "weed." Lewis responded that he had not, and Fautsch asked Lewis if he would be willing to take a drug test. Lewis agreed. Lewis Dep. 104:22-105:4. Fautsch separately approached D.J. and asked him if he had been using marijuana, and D.J. said no. Fautsch Dep.

45:24-46:6.   Fautsch then called Valvoline's human resources department and spoke to Ginger Childress who advised Fautsch to take Lewis and D.J. to be tested.  Id. at 50:21-51:9.

Fautsch drove Lewis and D.J. to the testing center, but neither Lewis nor D.J. had proper photo identification.  They returned to work.  Id. at 59:7-61:8; Lewis Dep. at 113:12-114:6. They later returned to the testing facility with Valvoline Regional Office Manager Amy Kinne, who identified Lewis and D.J.  Lewis Dep. 118:25-119:7.

Test center staff member Deborah Stich instructed Lewis to urinate into a cup up to a certain line.  Lewis urinated in the cup, but did not fill it up to the line as instructed.  Lewis Dep. 121:22-123:11.  Stich heard Lewis urinate "a lot" in the toilet. Stich Dep. 27:23-25.  Lewis contends that he did not urinate in the toilet a substantial amount, but only "tinkled" or "finished" in the toilet.  Lewis Dep. 123:13-124:5.

Stich then gave Lewis a form stating that he had three hours to submit another sample and that failure to do so would be taken as a refusal to test.  Lewis signed the form.  Id. at 128:13-21. Stich disposed of the sample.  Id. at 162:4-7.  D.J. also failed to produce a sufficient sample.  Id. at 130:19-22.

While seated in the waiting room, Lewis and D.J. were giggling and laughing, and Lewis asked Fautsch "why don't you take a drug test with us."  Fautsch Dep. 71:21-72:2; see Kinne Dep. 28:24-28:8;

3

Lewis Dep. 131:2-10.   Another person was present in the waiting room and some of the Valvoline employees were in Valvoline uniforms.   Fautsch Dep. 72:3-17; Lewis Dep. 113:1-5.

Fautsch approached Stich to find out why both employees had to submit a second sample.   Fautsch Dep. 79:25-80:3.   Stich told him that Lewis and D.J. submitted insufficient samples and that she heard Lewis urinating in the toilet.   Id. at 80:4-82:17.   Fautsch then called Todd Greene, Manager of Occupational Medicine.   Fautsch explained that Lewis was being disruptive and failed to follow instructions and asked Greene "how much do we let this continue"? Id. at 88:12-89:11; see Kinne Dep. 28:21-29:5. Greene advised Fautsch to have the original sample tested if possible and to cancel Lewis's second test if Stich were willing to sign a statement explaining her observations.   Fautsch Dep. 90:5-13, 96:20-23; Greene Dep. 26:6-10; Kinne Dep. 21:23-22:8.  Kinne then told Stich to cancel the second test.   Fautsch Dep. 93:17-22.

Fautsch told Lewis that his first sample was going to be tested and that he couldn't submit another sample.   Lewis Dep. 134:1-7.   Fautsch testified that, at that point, he did not know that Stich had disposed of the sample. Fautsch Dep. 96:10-17. D.J.

submitted another sample[1] and received a copy of his chain-of-custody form.  Lewis Dep. 134:16-21.  The employees then left the test facility.

Lewis asked to see his chain-of-custody form.  Fautsch discovered that he did not have the form and returned to get it.  While the employees were walking to the elevator to exit the building, Lewis received his form and learned that his test had been canceled "due to disruption" and that the original sample would not be tested.  Lewis Dep. 134:21-135:22.  Lewis asked why his test had been canceled.  Lewis contends that Fautsch then said "shut up about it or you will be fired."  Id. at 135:21-24.  Lewis repeatedly stated that he was upset about being lied to and used profanity as the employees exited the building.  Id. at 136:21-141:4.  Fautsch fired Lewis.  Fautsch Dep. 126:19-21.

On November 19, 2009, Lewis filed this action in Minnesota state court alleging that Valvoline violated the Minnesota Drug and Alcohol Testing in the Workplace Act (MDATWA), Minnesota Statutes §§ 181.950-181.957.  Valvoline timely removed and moved for summary judgment.  The court heard oral argument on May 20, 2011, and now addresses the motion.

---

[1] D.J.'s test result was positive for marijuana, and after an opportunity to undergo drug treatment, he again tested positive for marijuana and was terminated.  Fautsch Dep. 33:5-36:1.

## DISCUSSION

### I.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. The evidence must be more than merely colorable; the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 249-50. If a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential

element necessarily renders all other facts immaterial.  Id. at 322-23.

## II.  MDATWA

Employers need not request or require drug or alcohol testing of employees.  Minn. Stat. § 181.951 subdiv. 7.  If an employer does request or require drug or alcohol testing, the employer must do so pursuant to a written policy and testing must be conducted by an approved laboratory.  Id. § 181.951 subdiv. 1.  The employer must give written notice of the policy to affected employees.  Id. § 181.952 subdiv. 2.  The employer must also provide a form to employees "on which to acknowledge that the employee or job applicant has seen the employer's drug and alcohol testing policy." Id. § 181.953 subdiv. 6(a).

An employer may not arbitrarily or capriciously request that an employee undergo testing.  Id. § 181.951 subdiv. 1(c). However, "[a]n employer may request or require an employee to undergo drug and alcohol testing if the employer has a reasonable suspicion that the employee ... is under the influence of drugs or alcohol." Id. § 181.951 subdiv. 5.

Additionally, an employer may not discharge an employee "on the basis of a positive test result from an initial screening test."  Id. § 181.953 subdiv. 10(a).  In order to discharge an employee on the basis of a positive test result, an employee must first be "given the opportunity to participate in ... a drug or

alcohol counseling or rehabilitation program." Id. § 181.953 subdiv. 10(b).

## A.   Reasonable Suspicion

Lewis first argues that Valvoline lacked reasonable suspicion to request a drug test.   Valvoline responds that the odor of marijuana on Lewis and D.J. fulfills the reasonable suspicion requirements of the MDATWA.   Reasonable suspicion is "a basis for forming a belief based on specific facts and rational inferences drawn from those facts." Id. § 181.950 subdiv. 12. Fautsch testified that Lewis and D.J. smelled strongly of marijuana.   The smell of marijuana is a specific, articulable fact that supports the rational inference that the employees were either under the influence of drugs or had violated Valvoline's substance abuse policy.   No witnesses dispute that Fautsch smelled what he believed to be marijuana after the employees returned to work, and Kinne and Stich were not present until hours after Valvoline requested a test.   Additionally, the giggling and disruptive behavior in the waiting room further support the reasonableness of Fautsch's suspicion.   Therefore, no reasonable jury could find that Valvoline lacked reasonable suspicion to test.

Lewis also argues that several of defendant's actions were arbitrary and capricious, including the cancellation of Lewis' test.   An employer may not require testing on an arbitrary or capricious basis.   (Minn. Stat. § 181.951 subdiv. 1(c).   "A

8

decision is arbitrary and capricious 'only where the decision lacks any rational basis.'"   Sledge v. Minneapolis Pub. Hous. Auth., A04-2479, 2006 WL 463542, at *4 (Minn. Ct. App. Feb. 28, 2006) (quoting Kise v. Prod. Design & Eng'g, Inc., 453 N.W.2d 561, 564 (Minn. Ct. App. 1990)).

"[A]ny rational basis" is a lower standard than "specific facts and rational inferences."  The court has already determined that Valvoline had reasonable suspicion to request testing.  As a result, Valvoline's actions were not arbitrary and capricious.  Moreover, the record shows that Valvoline's actions were deliberate and reasonable.  Fautsch called Valvoline's human resources department after he formed reasonable suspicion.  After Fautsch was instructed to test the employees, he took Lewis to be tested.  Valvoline ultimately decided not to test Lewis after he provided an inadequate sample despite urinating in the toilet and exhibited other disruptive behavior.  In short, Valvoline had a rational basis to test and a rational basis to cancel the test.  Therefore, Valvoline's actions were not arbitrary and capricious, and summary judgment is warranted.

**B.   Unlawful Termination**

In Minnesota, employment is assumed to be at will, absent a specific agreement otherwise.  Martens v. Minn. Min. & Mfg. Co., 616 N.W.2d 732, 741 (Minn. 2000).  An "employer can summarily dismiss [an at-will] employee for any reason or no reason."  Pine

River State Bank v. Mettille, 333 N.W.2d 622, 627 (Minn. 1983). Lewis concedes that he was an at-will employee and could be fired "for any reason." Lewis Dep. 60:8-21; 91:8-16; see id. Ex. 8.

The MDATWA limits an employer's ability to terminate an employee, but it is not an anti-discrimination statute. The statute only limits termination "on the basis of a positive test result." Minn. Stat. § 181.953 subdiv. 10(a). The MDATWA sets procedural requirements for employers to request or require drug testing. It does not create a legal duty for employers to test or a legal right for employees to demand a test. Minn. Stat. § 181.951 subdiv. 7.

Nothing in the record suggests that Valvoline terminated Lewis on the basis of a positive test result. Lewis was disruptive in the waiting room, and the test-center staff determined that he had disrupted the test. Valvoline decided to cancel the test. The employees were returning to work when Lewis's continued insubordination led to his termination. Thus, there was no "test result" to form the basis of an unlawful termination. Moreover, Valvoline could have terminated Lewis for insubordinate or disruptive actions even if he were allowed to complete the test. See In re Copeland, 455 N.W.2d 503, 506 (Minn. Ct. App. 1990) (finding MDATWA does not prohibit discharge for conduct independent of positive test result even where "inextricably intertwined with

the use of illegal drugs"); see also <u>City of Minneapolis v. Johnson</u>, 450 N.W.2d 156, 160 (Minn. Ct. App. 1990). Therefore, summary judgment is warranted.[3]

## C.   Notice and Acknowledgment

Lewis also argues that Valvoline failed to provide him with a written copy of its testing policy and an acknowledgment form. Lewis's deposition testimony directly contradicts these allegations. Lewis Dep. 91:1-96:9. A plaintiff may not create a genuine issue of material fact by contradicting his sworn deposition testimony. <u>Dotson v. Delta Consol. Indus., Inc.</u>, 251 F.3d 780, 781 (8th Cir. 2001). Therefore, no genuine dispute of material fact exists, and summary judgment is warranted.

## D.   Contents of Valvoline's Policy

Lewis also argues that Valvoline's drug-testing policy does not contain the elements required under Minnesota Statutes § 181.952. Lewis did not raise this issue in his complaint and did not seek to amend his complaint. Lewis first raised this new claim in his memorandum in response to the instant motion. The court does not consider the claim. <u>See Rodgers v. City of Des Moines</u>,

---

[3] The record shows that Lewis refused to "cooperate fully with [Valvoline's] drugs and/or alcohol screening or search provision" by urinating into the toilet and not giving a full sample. <u>See</u> Lewis Dep. Ex. 9. This behavior provided an independent basis to terminate Lewis.

435 F.3d 904, 910 (8th Cir. 2006) (holding that district court "properly refused to consider unpled allegations" on a motion for summary judgment).  Therefore, summary judgement is warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 15] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 9, 2011

s/David S. Doty
David S. Doty, Judge
United States District Court